No. 13-1053

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

NATIONAL ASSOCIATION OF TOBACCO OUTLETS, INC., *et al*.;

*Plaintiffs-Appellants*,

v.

CITY OF PROVIDENCE, RHODE ISLAND, *et al*.;
*Defendants-Appellees.*

_____

On Appeal From The United States District Court
For The District Of Rhode Island
Hon. Mary M. Lisi, Chief Judge

_____

***AMICI CURIAE* BRIEF
IN SUPPORT OF APPELLEES CITY OF PROVIDENCE *et al.*,
IN SUPPORT OF AFFIRMANCE OF DISTRICT COURT ORDER,
AND AGAINST PREEMPTION**

_____

June 4, 2013

Donald A. Migliori
Vincent I. Parrett
MOTLEY RICE LLC
321 South Main St., 2nd Floor
Providence, RI 02903
(401) 457-7700
dmigliori@motleyrice.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

No party to this filing has a parent corporation, and no publicly held

corporation owns 10% or more of the stock of any of the parties to this filing.

## TABLE OF CONTENTS

**STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE**.......... 1

**ISSUES PRESENTED** ................................................................. 3

**SUMMARY OF ARGUMENT** ....................................................... 4

**ARGUMENT** ............................................................................. 6

    **1.  There is a strong presumption against federal preemption of these Providence Ordinances protecting health and safety** ........................ 6

    **2.  The FSPTCA does not preempt the Flavor Ordinance.** ..................... 10

        **A.    The Preservation Clause** ............................................ 10

        **B.    The Preemption Clause** ............................................. 11

        **C.    The Savings Clause** ................................................... 12

    **3.  The Cigarette Labeling Act does not preempt the Price Ordinance** ...................................................... 18

    **4.  Rhode Island law does not preempt the Price Ordinance** ................ 26

**CONCLUSION** ....................................................................... 30

**CERTIFICATE OF COMPLIANCE** ........................................... 32

**CERTIFICATE OF SERVICE** ................................................... 33

iii

# TABLE OF AUTHORITIES

## <u>Cases</u>

*23-34 94th St. Grocery Corp. v. New York City Board of Health,*
    685 F.3d 174 (2d Cir. 2012) .......................................................................21

*44 Liquormart, Inc. v. Rhode Island,*
    517 U.S. 484 (1996)...............................................................................24

*Altria Grp. v. Good*
    555 U.S. 70 (2008) ............................................................................... 6

*Amico's Inc. v. Mattos,*
    789 A.2d 899 (R.I. 2002).......................................................... 3, 5, 26, 27, 29

*Jones v. Vilsack,*
    272 F.3d 1030 (8th Cir. 2001) ...................................................................19

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001)................................................................................ 25

*Massachusetts v. Ass'n of Health Maintenance,*
    194 F.3d 176 (1st Cir. 1999)......................................................................6

*Nat'l Meat Ass'n v. Harris,*
    132 S. Ct. 965 (2012)...........................................................................16

*Rockwood v. City of Burlington,*
    21 F. Supp. 2d 411(D. Vt. 1998) ................................................................19

*Simonetti, Inc. v. State ex rel. Gallion,*
    132 So. 2d 252 (Ala. 1961).......................................................................21

*Town of East Greenwich v. Narragansett Electric Co.,*
    651 A.2d 725 (R. I. 1994).......................................................................29

*Town of E. Greenwich v. O'Neil,*
    617 A.2d 104 (R.I. 1992) .............................................................26, 27, 28

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York,*
     703 F. Supp. 2d 329 (S.D.N.Y. 2010) ("*U.S. Smokeless Tobacco I*"),
     *aff'd*, 708 F.3d 428 (2d Cir. 2013).................................................................11

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York,*
     09 Civ. 10511 (CM), 2011 U.S. Dist. LEXIS 133018 (S.D.N.Y. 2011)
     ("*U.S. Smokeless Tobacco II*"),
     *aff'd*, 708 F.3d 428 (2d Cir. 2013)........................................................ 11, 28

*U.S. Smokeless Tobacco Mfg. Co. v. City of New York,*
     708 F.3d 428 (2d Cir. 2013)
     ("*U.S. Smokeless Tobacco III*") .........................................................*passim*

## Statutes & Ordinances

Family Smoking Prevention and Tobacco Control Act ("FSPTCA"),
     123 Stat. 1776, as amended, 21 U.S.C. § 387 *et seq.*...........................*passim*

Federal Cigarette Labeling and Advertising Act ("Cigarette Labeling Act"),
     79 Stat. 282, as amended, 15 U.S.C. § 1331 *et seq.*..............................*passim*

Providence Code of Ordinances §§ 14-300, 14-303
     ("Price Ordinance") ..............................................................................*passim*

Providence Code of Ordinances §§ 14-308, 14-309
     ("Flavor Ordinance")............................................................................*passim*

**STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE***

*Amici*[1] are non-profit public health organizations and advocacy groups who have worked for decades to protect the public from the devastating dangers of tobacco use—the leading cause of preventable death in America, taking over 440,000 lives every year.[2]

As Providence's Flavor Ordinance and Price Ordinance regulating sales of tobacco products will help prevent children from beginning to use these products

---

[1] *Amici* are AMERICAN ACADEMY OF PEDIATRICS-RI CHAPTERS; AMERICAN CANCER SOCIETY CANCER ACTION NETWORK; AMERICAN HEART ASSOCIATION; AMERICAN LEGACY FONDATION; AMERICAN LUNG ASSOCIATION; AMERICAN LUNG ASSOCIATION IN RHODE ISLAND; CAMPAIGN FOR TOBACCO-FREE KIDS; CENTER FOR SOUTHEAST ASIANS; CHARIHO TRI-TOWN TASK FORCE ON SUBSTANCE ABUSE PREVENTION; CODAC BEHAVIORAL HEALTHCARE; DISCOVERY HOUSE; FAMILY SERVICE OF RHODE ISLAND; FEDERAL HILL HOUSE; JOHN HOPE SETTLEMENT HOUSE; MEETING STREET; NARRAGANSETT CONSULTING; NARRAGANSETT PREVENTION PARTNERSHIP; NATIONAL ASSOCIATION OF COUNTY AND CITY HEALTH OFFICIALS; RHODE ISLAND COLLEGE SCHOOL OF NURSING; RHODE ISLAND MEDICAL SOCIETY; RHODE ISLAND PUBLIC HEALTH INSTITUTE; RHODE ISLAND STATE NURSES ASSOCIATION; UNIFIED INSIGHT CONSULTING; URBAN LEAGUE OF RHODE ISLAND; and YOUTH PRIDE INC.

[2] "Cigarette smoking causes about 1 out of every 5 deaths in the United States each year. . . .  443,000 deaths annually (including deaths from secondhand smoke)." http://www.cdc.gov/tobacco/data_statistics/fact_sheets/health_effects/tobacco_related_mortality. Not including deaths from secondhand smoke, cigarette smoking is estimated to be responsible for 1,695 deaths per year in the state of Rhode Island alone.  Source: Centers for Disease Control and Prevention. State-Specific Smoking-Attributable Mortality and Years of Potential Life Lost - United States, 2000-2004. *MMWR* 2009; 58(2):29-33.

as well as help adults quit, *Amici* have a strong interest in ensuring that localities like Providence have the authority to enact reasonable health and safety regulations to protect the community, and particularly young people, from the scourge of tobacco addiction and disease.

Under Federal Rule of Appellate Procedure 29(a), *Amici* respectfully represent that all parties have consented to the filing of this *Amici Curiae* brief.[3]

---

[3] *Amici* affirm that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person contributed money that was intended to fund the preparation or submission of this brief.  Fed. R. App. P. 29(c)(5).

## ISSUES PRESENTED

In deciding Appellants' preemption arguments, the Court is presented with

two straightforward issues:

- Are Providence's Ordinances restricting the sale of flavored tobacco products (through its "Flavor Ordinance") and prohibiting the sale of tobacco products at price discounts by coupons and multi-pack offers (through its "Price Ordinance"[4]) preempted by the Family Smoking Prevention and Tobacco Control Act ("FSPTCA") or the Federal Cigarette Labeling and Advertising Act ("Cigarette Labeling Act") that expressly *permit* state and local regulation of sales of tobacco products?

- Are Providence's Ordinances restricting the sale of flavored tobacco products and prohibiting the sale of tobacco products at price discounts by coupons and multi-pack offers field-preempted by Rhode Island law after the Rhode Island Supreme Court has held that "there is no indication that the [Rhode Island] General Assembly even impliedly intended to occupy the field of regulating smoking." *Amico's Inc. v. Mattos*, 789 A.2d 899, 907 (R.I. 2002)?

---

[4] Just as the District Court noted they did below, the Tobacco-Company Appellants refer to Section 14-303 as the "Promotion Ordinance." (Add. 10). Yet just like the District Court did below, *Amici* here for consistency, clarity, and accuracy refer to Section 14-303 as the "Price Ordinance." (Add. 10).

## SUMMARY OF ARGUMENT

Chief Judge Lisi's preemption analysis is correct and should be affirmed in all respects.

The plain text of the preemption provisions of the FSPTCA and Cigarette Labeling Act show that they do not preempt the Providence Ordinances. This reading is bolstered by the strong presumption against federal preemption of state and local health and safety regulations that is not overcome unless preemption is the clear and manifest purpose of Congress. In this case, that presumption against federal preemption is strengthened because the local ordinances at issue protect the public—and particularly young people—from tobacco products, undoubtedly one of the greatest public health threats of our time. In light of that strong presumption, the District Court correctly found that the FSPTCA and Cigarette Labeling Act do not preempt the Flavor Ordinance or the Price Ordinance because the plain text of the FSPTCA and Cigarette Labeling Act *permit* Providence to do exactly what it did through these Ordinances—regulate sales of tobacco products.  Specifically:

- While Appellants argue that the FSPTCA preempts the Flavor Ordinance, the District Court correctly found that the FSPTCA "reaffirms that state or local regulations related to the sale and/or distribution of tobacco products *are not preempted* by the FSPTCA." (Add. 29, emphasis added) (*citing* 21 U.S.C. §387p(a)(2)(B)).

4

- While Appellants argue that the Cigarette Labeling Act preempts the Price Ordinance, the District Court correctly found that the Price "Ordinance falls into the category of conduct *specifically excluded from preemption* by Subsection 1334(c)" of the Cigarette Labeling Act because it merely "regulates the 'time, place, and manner' of how cigarettes may be purchased in the City of Providence." (Add. 26, emphasis added).

Appellants also argue that Rhode Island law preempts the entire field of regulation including the Price Ordinance. While Appellants assert that the General Assembly intended to "completely occupy the field of regulation" of tobacco product sales (Appellants' Br. 56), that argument fails because the Rhode Island Supreme Court has ruled that "there is no indication that the General Assembly even impliedly intended to occupy the field of regulating smoking." (Add. 37, *citing with approval Amico's Inc. v. Mattos*, 789 A.2d 899, 907 (R.I. 2002)). Appellants try to avoid that holding by arguing that the General Assembly considered but declined to enact "bills with language virtually identical" to the Price Ordinance. (Appellants' Br. 58). Yet as the District Court explained, "the General Assembly's apparent disinclination to enact measures similar to the provision in Section 14-303 is simply insufficient to support an inference that the Legislature intended to preempt completely the regulation of tobacco product sales." (Add. 38).

## ARGUMENT

**1.    There is a strong presumption against federal preemption of these Providence Ordinances protecting health and safety.**

In our federalist system, there is a strong presumption against federal preemption of state and local health and safety regulations that is not overcome unless preemption is "the clear and manifest purpose of Congress." *Altria Grp. v. Good*, 555 U.S. 70, 77-78 (2008). Indeed, this Court instructs the District Courts to "start with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress," *Massachusetts v. Ass'n of Health Maintenance*, 194 F.3d 176, 179 (1st Cir. 1999)—a first principle that Chief Judge Lisi followed and based her preemption analysis upon in this case. (Add. 23).

Rejecting the same argument by these same tobacco companies that the FSPTCA preempts a nearly identical New York City regulation banning the sale of flavored tobacco products, the Second Circuit recently underscored that the presumption against preemption "is particularly strong where, as here, a state or locality seeks to exercise its policy powers to protect the health and safety of its citizens." *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 432 (2d Cir. 2013) ("*U.S. Smokeless Tobacco III*"). Applying that strong presumption, the Second Circuit construed narrowly the FSPTCA Preemption Clause but construed broadly its separate clauses preserving and saving the power

of localities to regulate health and safety: "in light of our presumption that Congress has not limited the exercise of local police powers, we adopt a narrower reading of the preemption clause that also gives effect to the preservation clause." *Id.* at 434. "[I]f there is any ambiguity as to whether the local and federal laws can coexist, we must uphold the [local] ordinance." *Id.* at 433.

The presumption against federal preemption is strongest when the local law is intended to protect the public from threats to public health—and tobacco use poses one of the greatest public health threats of our time. Tobacco is the nation's leading preventable cause of death. Indeed, among consumer goods, tobacco products are uniquely deadly: they kill up to one-half of the people who use them as they are intended to be used.[5] There is no public health objective of greater importance than reducing death and disease caused by tobacco.

Indeed, the two local ordinances at issue here—the Flavor Ordinance and the Price Ordinance—are each addressed to a critically important part of the strategy in the fight against tobacco-related disease: curbing youth consumption of tobacco products. Eighty-eight percent (88%) of long-term daily tobacco users try their first cigarette by the time they are age 18.[6] If young people are able to avoid tobacco when they are underage, they likely will never become regular tobacco users. Yet

---

[5] World Health Organization, Report on the Global Tobacco Epidemic 8 (2008).
[6] DHHS, *Preventing Tobacco Use Among Youth and Young Adults, A Report of the Surgeon General (2012),* at 3 (JA 690).

each day in the United States, nearly 4,000 people under 18 smoke their first cigarette, and an additional 1,000 young people under 18 become daily cigarette smokers.[7]

The tobacco industry is well aware that its long-term financial well-being depends on its capacity to addict large numbers of replacement users to its deadly products. So the tobacco companies develop and implement strategies to get young people to start using their products, knowing that such use will eventually become addiction. The Providence Ordinances address two of those strategies: (1) selling flavored smokeless tobacco and other non-cigarette tobacco products, which the industry believes will appeal to young people; and (2) the use of price discounts to increase demand among price-sensitive young buyers.

Smokeless tobacco, as the record below demonstrates, is not only dangerous and addictive in itself;[8] it also poses dangers as an introductory tobacco product that may serve as a gateway to cigarette smoking.[9] In recent years, the two largest U.S. tobacco companies, Altria (the parent company of Philip Morris) and Reynolds American Inc., have acquired large smokeless tobacco companies and have aggressively marketed smokeless tobacco products, especially to young

---

[7] *Id.*

[8] The U.S. Dept. of Health and Human Services has stated that "there is no safe form of tobacco," adding that "at least 28 chemicals in smokeless tobacco have been found to cause cancer." U.S. Food and Drug Administration Fact Sheet, *Flavored Tobacco Products* (2010); Connolly Aff., ¶¶ 4-8 (JA 616-618)

[9] Connolly Aff., ¶7, at 4 (JA 618)

8

people.[10]  In addition, tobacco companies have sought to encourage use of their products by young people by promoting flavored products, including flavored smokeless products and products characterized as cigars.[11]

Price discounting is another well-established tobacco industry strategy to market products to young people, who are particularly price-sensitive.  There is a cause and effect relationship between the price of tobacco products and their use by young persons.[12]  Coupons and multi-pack discounts are two effective ways to implement targeted price discounts because they reduce the price of cigarettes, thereby attracting greater numbers of youthful users.

Thus, the Providence Ordinances represent one local community's efforts to protect its young people from addiction to lethal tobacco products by countering two of the tobacco industry's most potent strategies to addict youth to their products.  Only the clearest direction from Congress should suffice to preempt such a critical exercise of local governmental power to protect the public's health. As the District Court found, such direction is utterly lacking in this case.  (Add. 25-26, 29-30).

---

[10] Connolly Aff., ¶9, at 4-5 (JA 618-619)

[11] Connolly Aff., ¶¶12-14, at 6-8 (JA 620-622).

[12] Chaloupka Aff., ¶¶13, 17, 19 and 23 and Figures 5 and 6 at 6, 9-10 and 12-13 (establishing relationship between prices and consumption) (JA 532-539).

**2.     The FSPTCA does not preempt Providence's Flavor Ordinance.**

The Flavor Ordinance is a local regulation of the sale of certain tobacco products within Providence, specifically making it "unlawful for any person to sell or offer for sale any flavored tobacco product to a consumer, except in a smoking bar." Providence Code of Ordinances at § 14-309. (Add. 52).

Contrary to the Tobacco-Company Appellants' argument that the FSPTCA preempts the Flavor Ordinance, Appellants' Br. at 39-51, the FSPTCA actually *authorizes* the Flavor Ordinance. As explained below, in the plain text of the FSPTCA, Congress stated its intent *not* to preempt local regulation of the sale of tobacco products.

The FSPTCA, in Section 916, adopted a tripartite approach to preemption:

**A.**     First, that section's **Preservation Clause** provides that State and local governments retain their historical power to regulate, among other things, the sale and distribution of tobacco products within their jurisdictions:

> Except as provided in [the Preemption Clause], nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of . . . a State or political subdivision of a State . . . to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products *that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age*, information reporting to the State, or measures relating to fire safety standards for tobacco products. . . .

10

21 U.S.C. § 387p(a)(1*)* (emphasis added).

And as the District Court below pointed out, "a recent decision by the United States District Court of the Southern District of New York analyzing a local statute nearly identical to . . . the Flavor Ordinance in this case" construed this Preservation Clause to mean "that the FSPTCA allows a state or locality to impose its own, more restrictive, regulations on the sale of tobacco products." (Add. 28-29) (*citing U.S. Smokeless Tobacco Mfg. Co. v. City of New York,* 703 F. Supp. 2d 329, 333 (S.D.N.Y. 2010) ("*U.S. Smokeless Tobacco I*"), *aff'd*, 708 F.3d 428 (2d Cir. 2013)); *see also*, *U.S. Smokeless Tobacco Mfg. Co. v. City of New York,* 09 Civ. 10511 (CM), 2011 U.S. Dist. LEXIS 133018, *4 (S.D.N.Y. Nov. 15, 2011) ("*U.S. Smokeless Tobacco II*") ("with respect to regulations relating to, or even prohibiting, sales of tobacco products, local governments are free to go above any federal floor set either by the FSPTCA or by the FDA acting pursuant to it."), *aff'd*, 708 F.3d 428 (2d Cir. 2013).

**B.**     Second, the **<u>Preemption Clause</u>** provides that, notwithstanding the preservation of local authority to restrict or prohibit the sale or distribution of tobacco products, the federal government has exclusive control over tobacco manufacturing, including the establishment of "tobacco product standards":

> No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter *relating to tobacco product standards*, premarket

11

review, adulteration, misbranding, labeling, registration, good
manufacturing standards, or modified risk tobacco products.

21 U.S.C. § 387p(a)(2)(A) (emphasis added).

Relying on the plain text of that Preemption Clause, the District Court
reasoned that "the FSPTCA preemption provision relates to tobacco product
standards, not to the sale and/or distribution of products prohibited by Section 14-
309 of the Flavor Ordinance." (Add. 29).

    **C.**    Third, the Preemption Clause is "followed, *and limited by*" (Add. 29,
emphasis added) the **<u>Savings Clause</u>**, which clarifies that the Preemption Clause
does not reach local sales or distribution regulations of tobacco products:

> [The Preemption Clause] does *not* apply to requirements relating to
> the *sale, distribution*, possession, information reporting to the State,
> exposure to, access to, the advertising and promotion of, or use of,
> *tobacco products* by individuals of any age, or relating to fire safety
> standards for tobacco products. . . .

21 U.S.C. § 387p(a)(2)(B) (emphasis added).

As the District Court explained, the Savings Clause "reaffirms that state or
local regulations related to the sales and/or distribution of tobacco products are not
preempted by the FSPTCA." (Add. 29). *Accord*, *U.S. Smokeless Tobacco III*, 708
F.3d at 433 ("pursuant to the savings clause, local laws that would otherwise fall
within the preservation clause are exempted if they constitute 'requirements
relating to the sale . . . of . . . tobacco products'").

12

Carefully construing the tripartite structure of the Preservation, Preemption, and Savings Clauses, the Second Circuit recently upheld a New York City ordinance virtually identical to the Providence Flavor Ordinance. *U.S. Smokeless III*, 708 F.3d 428 (2d Cir. 2013). As the Second Circuit pointed out, the Preservation Clause "expressly preserves localities' traditional power to adopt any 'measure relating to or prohibiting the sale' of tobacco products." *U.S. Smokeless Tobacco III*, 708 F.3d at 433 (*citing* 21 U.S.C. § 387p(a)(1)). The Providence Flavor Ordinance fits well within that description. As the Second Circuit further noted, the authority of localities to adopt measures related to the sale of tobacco products "is limited only to the extent that a state or local regulation contravenes one of the specific prohibitions of the preemption clause," *id.*, one of which forbids local governments to impose "any requirement . . . relating to tobacco product standards." *Id.* (*quoting* 21 U.S.C. § 387p(a)(2)(A)). Even then, as the Second Circuit explained, according to the Saving Clause, "local laws that would otherwise fall within the preemption clause are exempted if they constitute 'requirements relating to the sale . . . of tobacco products.'" *Id.* (*quoting* 21 U.S.C. § 387p(a)(2)(B)). The Second Circuit concluded that, taken in its entirety, Section 916 "distinguishes between manufacturing and the retail sale of finished products; it reserves regulation at the manufacturing stage exclusively to the federal government, but allows states and localities to continue to regulate sales and other

13

consumer-related aspects of the industry in the absence of conflicting federal regulations." *Id.* at 434.

In this case, as the District Court found, the Flavor Ordinance *is* a local sales restriction "prohibit[ing] the sale of flavored tobacco products" anywhere in Providence other than at a tobacco bar. (Add. 30). Such local sales restrictions are specifically preserved (by the Preservation Clause) for state and local regulation and saved (by the Savings Clause) from any reading of the Preemption Clause that might otherwise seem to reach them. Moreover, the Flavor Ordinance in no way implicates the purpose of the "product standard" preemption provision – which is to avoid conflicting federal and local obligations regarding how tobacco products are *made.* Hence, the Flavor Ordinance is not preempted under the plain text of the FSPTCA. (Add. 28-30).

The Tobacco-Company Appellants argue now that even though the Flavor Ordinance by its plain text and title[13] looks like a sales regulation, it "actually" is a "content-based manufacturing regulation" designed to "evade preemption." Appellants' Br. at 43. But that same argument was rejected by the Second Circuit in the New York City case:

> it does not follow that every sales ban—many of which would likely
> have some effect on manufacturers' production decisions—should be

---

[13] "Sec. 14-309. *Sale* of flavored tobacco products prohibited: It shall be unlawful for any person to *sell* or offer for sale any flavored tobacco product to a consumer, except in a smoking bar" (Add. 52, emphasis added)

> regarded as a backdoor 'requirement . . . relating to tobacco product standards' that is preempted by the FSPTCA, 21 U.S.C. § 387p(a)(2)(A). Such a broad reading of the preemption clause, which collapses the distinction between sales and product regulations, would render superfluous [the FSPTCA's] three-part structure, and in particular would vitiate the preservation clause's instruction that the Act not be 'construed to limit the authority of . . . a State or political subdivision of a State . . . to enact . . . and enforce any . . . measure . . . prohibiting the sale . . . of tobacco products.' 21 U.S.C. §387p(a)(1).

*U.S. Smokeless Tobacco III*, 708 F.3d at 434.

Appellants find it difficult to distinguish between regulation of the sale of a product and regulation of its manufacture, but that is precisely the distinction drawn by Section 916. It is, moreover, a distinction that makes sense in a statute establishing a scheme to regulate companies that manufacture tobacco products for a national market, while preserving to states and localities the authority to decide which of those products will be legally sold within their borders. That this may result in some states and localities imposing restrictions on the sale of products that go beyond federal law is consistent with the FSPTCA's overarching objective of reducing tobacco use, particularly among young people. Hence, allowing state and local jurisdictions to impose their own sales restrictions advances the approach envisioned by Congress in enacting the FSPTCA.

The Tobacco-Company Appellants insist that the Flavor Ordinance is "actually" a manufacturing regulation because the Ordinance defines "flavored tobacco product" as containing "a constituent that imparts a characterizing flavor."

15

(Add. 51). They argue that because its definition uses the term "*constituent*," the

Ordinance must therefore be a preempted *manufacturing* regulation.  Appellants'

Br. 43, 47-50.  But, as the Second Circuit explained, that argument fails because:

> the City does not care what goes into the tobacco or how the flavor is
> produced, but only whether the final tobacco products are ultimately
> characterized by—or marketed as having—a flavor.  No matter the
> level of generality used to define 'flavored tobacco products,' the
> ordinance is not easily read to direct manufacturers as to which
> ingredients they may or may not include in their products.

*U.S. Smokeless Tobacco III*, 708 F.3d at 434. The same holds true here. Indeed, it

is not necessary to know what specific "constituents" are in a tobacco product, or

to know anything about how the product is manufactured, to know that its sale in

Providence would violate the Flavor Ordinance.  One needs to know only that it

imparts a "characterizing flavor," defined as "a distinguishable taste or aroma . . .

either before or during consumption" of the product. If it imparts such a flavor then

it may be presumed that it does so because of some "constituent" in the product,

but the Flavor Ordinance does not infringe on the FDA's authority to determine

*which* chemicals and "constituents" may be used in manufacturing tobacco

products.  Hence, it is not preempted by the FSPTCA.

The Tobacco-Company Appellants heavy reliance on *Nat'l Meat Ass'n v.*

*Harris*, 132 S. Ct. 965 (2012), *see* Appellants' Br. 43, 47, is misplaced because the

Flavor Ordinance here is easily distinguishable from the California slaughterhouse

statute that was held to be a preempted manufacturing standard there. As explained

by the Second Circuit in *U.S. Smokeless Tobacco III*,

> [t]o be sold in the state, meat would have to be have to be processed in
> a particular way.  The [flavored tobacco product] ordinance at issue
> here does not concern itself with the mode of manufacturing, or with
> the ingredients that may be included in tobacco products.  Rather, it
> prohibits the sale of a recognized category of tobacco products,
> characterized by their flavor. . . .  Plaintiffs' effort to characterize the
> ordinance as a manufacturing standard is tantamount to describing a
> ban on cigarettes as a manufacturing standard mandating that cigars
> be manufactured in minimum sizes and with tobacco-leaf rather than
> paper wrappings.

708 F.3d at 435, n. 5. Hence, the Tobacco-Company Appellants' preemption

argument against the Flavor Ordinance simply unravels.

Finally, even if it could be said that restrictions on the sale of tobacco

products, like the Flavor Ordinance, have some indirect effect on manufacturing

product standards, the Savings Clause of Section 916 would preclude preemption.

The Savings Clause unequivocally provides that the Preemption Clause "does not

apply to requirements relating to the sale . . . of tobacco products." 21 U.S.C. §

387p(a)(2)(B).  Because the Flavor Ordinance is such a requirement, it cannot be

preempted regardless of any claimed impact it might have on the manufacture of

tobacco products.

17

**3. The Cigarette Labeling Act does not preempt Providence's Price Ordinance.**

The Price Ordinance is a local regulation of the sale of tobacco products within Providence, specifically forbidding any tobacco license holder to "accept or redeem, offer to accept or redeem, or cause or hire any person to accept or redeem or offer to accept or redeem any coupon that provides any tobacco products without charge or for less than the listed or non-discounted price" or to sell tobacco products or cigarettes to consumers "through any multi-pack discounts (e.g. 'buy-two-get-one-free') or otherwise provide or distribute to consumers" tobacco products or cigarettes "for less than the listed or non-discounted price in exchange for the purchase" of any other tobacco product or cigarette.  Price Ordinance § 14-303, ¶¶ 1-4; (Add. 48-49). Simply put, the Price Ordinance tells retailers that when they sell tobacco products in Providence they cannot slash the price through coupons or multi-pack discounts.

As explained in Argument Section 2 above, the FSPTCA's Preservation and Savings Clauses explicitly preserve to state and local authorities the power to regulate the sale of tobacco products. Indeed, Appellants themselves characterize the Savings Clause as permitting "state and local governments to regulate where, when, and how tobacco products are sold . . . ."[14]  The Price Ordinance regulates the price at which tobacco products are sold in Providence—clearly a regulation of

---

[14] Appellants' Br. at 45.

18

"how" tobacco products are sold.

Given that the FSPTCA expressly preserves state and local authority over regulation of how tobacco products are sold, Appellants shift ground by arguing that a separate federal statute, the Cigarette Labeling Act, preempts the Price Ordinance. Appellants' Br. 17-27. Appellants rely on the express preemption clause of Section 1334(b) of the Cigarette Labeling Act, which preempts state and local governments from imposing "requirements or prohibitions …with respect to the advertising or promotion of any cigarettes. . . ."  15 U.S.C. § 1334(b).

The Tobacco-Company Appellants rely heavily on *pre*-2009 cases such as *Jones v. Vilsack*, 272 F.3d 1030, 1036 (8th Cir. 2001) and *Rockwood v. City of Burlington*, 21 F. Supp. 2d 411, 419-20 (D. Vt. 1998), to argue that pricing discounts are "promotion" preempted by federal law under Section 1334(b). Appellants' Br. at 19-20.  However, when Congress enacted the FSPTCA in 2009, it not only made clear its intent to leave intact local authority to regulate the sale and distribution of tobacco products through the FSPTCA's Preservation and Savings Clauses as discussed above, but also *simultaneously* narrowed the scope of the *Cigarette Labeling Act's* Section 1334(b) preemption clause.

Specifically, while leaving in place the Cigarette Labeling Act's Section 1334(b) preemption clause providing—

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion

of any cigarettes the packages of which are labeled in conformity with the provisions of this Act—

the FSPTCA of 2009 *added* a new subsection (c) to Section 1334 of the Cigarette Labeling Act providing—

> Notwithstanding subsection (b), *a State or locality may enact statutes and promulgate regulations*, based on smoking and health, that take effect after the effective date of the [FSPTCA] *imposing specific bans or restrictions on the time, place, and manner,* but not content, *of the advertising or promotion of any cigarettes.*

15 U.S.C. § 1334(c) (emphasis added).

Read in harmony with the FSPTCA's Preservation and Savings Clauses, the plain language of this new Section 1334(c) establishes that Congress intended to preempt only a very narrow category of regulations—those that regulate the "*content*" of cigarette advertising and promotional material—and otherwise provided broad authority to state and local governments to establish time, place, and manner restrictions in addition to regulating sales of tobacco products.  Hence, as the District Court explained, the Tobacco-Company Appellants' reliance on cases that "precede the exclusionary provision of Section 1334(c)" is misplaced. (Add. 26).

By the plain text of the FSPTCA Preservation and Savings Clauses, *and* by adding the new savings provision at Section 1334(c) of the Cigarette Labeling Act, Congress expressed its intent to sharply limit federal preemption to the minimum necessary to advance the federal interest in uniform standards applicable to the

manufacture of tobacco products and to the content of cigarette advertising and promotional material.[15]   The FSPTCA establishes no national standards regarding the price of tobacco products and there is nothing in the statute to suggest an intention to preempt the authority of states or localities to regulate the price of tobacco products.[16]

Moreover, the Price Ordinance is easily distinguishable from the municipal regulation at issue in *23-34 94th St. Grocery Store v. New York City Board of Health*, 685 F.3d 174 (2d Cir. 2012), the only post-2009 case cited by Appellants. That case involved a regulation requiring all tobacco retailers to display signs bearing graphic images showing the adverse health effects of smoking at the point

---

[15] Congress' primary purpose in including a preemption provision in the Cigarette Labeling Act was to avoid "diverse, nonuniform, and confusing cigarette labeling and advertising regulations" that would impose conflicting and burdensome obligations on tobacco companies that advertise in numerous jurisdictions.  Pub. L. No. 89-92, §2 (1965) (codified as amended at 15 U.S.C. §1331 (2011). The Price Ordinance does not interfere with this federal interest because it does not concern itself with the content of advertisements or of promotional material.

[16] In fact, roughly half of the states regulate the pricing of tobacco products through cigarette minimum price laws. U.S. Ctrs. for Disease Control & Prevention, *State Cigarette Minimum Price Laws-- United States, 2009*, 59 MORBIDITY & MORTALITY WEEKLY RPT. 389, 389 (Apr. 9, 2009), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5913a2.htm. These types of pricing laws have long been deemed to be constitutional and have not been challenged under the FCLAA.  *See, e.g., Simonetti, Inc. v. State ex rel. Gallion*, 132 So. 2d 252, 253 (Ala. 1961) (noting that 38 states had enacted minimum price laws, and "the courts have been practically unanimous in affirming the principles of these laws against constitutional attack").

21

of sale. The Second Circuit held that this was a content-based regulation because "requiring a warning sign in close proximity to a cigarette display has practically the same effect as requiring a warning on the display itself, thereby directly affecting the content of the promotional message conveyed to consumers at the point of display." *Id.* at 183. The Court distinguished other regulations affecting promotion in a way that makes clear why the Providence Price Ordinance is not preempted:

> To be clear, we do not hold that every state or local regulation affecting promotion violates the Labeling Act's preemption clause. Section 1334(c) provides a safe harbor for laws regulating the time, place or manner of promotional activity. For example, the City's requirement that retailers display cigarettes only behind the counter or in a locked container [Citation omitted] clearly affects promotional display, but would fall within this exception, as it only affects the place and manner of the display. Only requirements or prohibitions directly affecting the *content* of the manufacturers' promotional message to consumers are preempted.

> *Id.* at 184 (emphasis in original).

The Price Ordinance does nothing to affect the content of any promotional message; rather it simply limits the manner in which sellers can discount the purchase price of tobacco products. As the District Court explained:

> Rather than controlling the content of promotional or advertising material, Section 14-303 regulates the 'time, place, and manner' of how cigarettes may be purchased in the City of Providence. As such, the [Price] Ordinance falls into the category of conduct *specifically excluded from preemption by Subsection 1334(c)* and provides no conflict with the intended purpose of the Labeling Act regarding uniform cigarette labeling and advertising.

22

(Add. 26, emphasis added).

Appellants also misapply and distort First Amendment principles in an effort to transform the Price Ordinance into a "content" restriction.

First, Appellants analogize the Price Ordinance to restrictions on free expression that have been found to be content-based because they favor some speech over other speech based on the viewpoints expressed. According to Appellants, the Price Ordinance is content-based "because it attacks only coupons and discounts that reference a specific subject matter – tobacco." Appellants' Br. at 22. But that analysis is not helpful in determining the meaning of the distinction between "content" and "time, place or manner" restrictions drawn by statutory preemption provisions that address only one product—cigarettes. The preemption provisions of the Cigarette Labeling Act draw a distinction between restrictions on the content of cigarette advertising or promotion, and restrictions relating to the time, place, and manner of the advertising or promotion of cigarettes. If, as Appellants' argue, any restriction on tobacco products alone necessarily is a restriction on content, then the possibility of time, place, and manner restrictions relating to cigarettes alone would be nullified. Under Appellant's reading of the statute, the *only* un-preempted time, place and manner restriction on cigarette promotion would be one that restricted similarly the promotion of *all* products. This is a result that Congress could not possibly have intended when it amended

23

the Cigarette Labeling Act by the FSPTCA of 2009.

Second, Appellants argue that the Price Ordinance is content-based because it prohibits only certain promotions: "Coupons and multi-pack discounts that tell consumers that prices offered are less than regular non-discounted prices of tobacco products." Appellants' Br. at 22. That argument proceeds from the false premise that there is no distinction between a regulation of a commercial transaction and a regulation of commercial speech; for Appellants, the Price Ordinance, by barring redemption of discount coupons and prohibiting multi-pack discounts, is necessarily a regulation of the content of messages implied by those kinds of commercial transactions (including, according to Appellants, the message "you're getting a bargain.") *Id.* But, as the Supreme Court explained in *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 512 (1996): "A State's regulation of the sale of goods differs in kind from a State's regulation of accurate information about those goods." The *Liquormart* Court further noted that "the entire commercial speech doctrine, after all, represents an accommodation between the right to speak and hear expression about goods and services and the right of government to regulate the sales of such goods and services." *Id.* at 499 (citation omitted). Appellants purport to apply First Amendment principles to determine the meaning of the preemption provisions of the Cigarette Labeling Act, but are far from faithful to those principles.

Tellingly, the Supreme Court has held that preemption of state regulation of advertising or promotion of cigarettes "still leaves significant power in the hands of States to . . . regulate conduct." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551 (2001). If such basic aspects of commerce as pricing structures are not conduct that the states may regulate, it is difficult to imagine over what sort of conduct they might retain "significant power." Nothing in the FSPTCA's 2009 amendment of the Cigarette Labeling Act suggests that it was intended to eviscerate state and local regulation of commercial tobacco transactions by regarding them as restrictions on the content of speech about those transactions. Indeed, the FSPTCA was intended to preserve state and local authority over sales and distribution of tobacco products, and, through its 2009 amendment to the Cigarette Labeling Act, *expand* the scope of state and local authority over the advertising and promotion of cigarettes, *not limit it*.

Thus, even if the Price Ordinance were regarded as a restriction on "promotion," it cannot be regarded as a restriction on promotional "content," and thus is not preempted by the Cigarette Labeling Act as amended by the FSPTCA of 2009.[17]

---

[17] Appellants' additional argument—that the Price Ordinance is content-based because it targets the "primary" effects of speech, not its "secondary effects"— (Appellants' Br. at 22-23) also is based on the false premise that a regulation of a commercial transaction is necessarily a regulation of speech. Again, the Price Ordinance bars specific kinds of promotional transactions. It regulates speech only

**4.      Rhode Island law does not preempt the Price Ordinance.**

The Tobacco-Company Appellants' last argument is that the Price

Ordinance is impliedly preempted by *Rhode Island* laws that "completely occupy

the field" regulating the sale of tobacco products. Appellants' Br. at 56. That

argument fails for several reasons.

First, the Supreme Court of Rhode Island already has held that "there is no

indication that the General Assembly even impliedly intended to occupy the field

of regulating smoking." *Amico's Inc. v. Mattos*, 789 A.2d 899, 907 (R.I. 2002)

(listing Rhode Island statutes that demonstrate the General Assembly's recognition

of municipalities' authority to regulate smoking in certain areas); (*see also* Add.

37) (District Court below citing with approval *Amico's* as undercutting Appellants'

field-preemption argument under Rhode Island law). So Appellants cannot show

that the Price Ordinance regulating tobacco product sales is "within the historical

dominion" of exclusive control by the State. *Town of East Greenwich v. O'Neil*,

617 A.2d 104, 111 (R.I. 1992) (Supreme Court articulating factors in field-

preemption and home-rule analysis under Rhode Island law).

Second, far from excluding local governments from playing any role in the

field of tobacco sales regulation, the General Assembly *recognizes* that local

insofar as it prohibits the offer of an illegal promotional transaction.  Nothing in
the Cigarette Labeling Act's preemption provisions suggest a Congressional intent
to prohibit states and localities from making certain commercial tobacco
transactions illegal, as well as prohibiting the offer of such illegal transactions.

governments play important roles in the field of tobacco sales regulation—*see, e.g.,* R.I. Gen. Laws §§ 11-9-13.6 (directing Health Department to coordinate and promote enforcement of prohibition of tobacco sale to minors with local authorities) and 11-9-13.11 (conferring enforcement power upon local police departments). Hence, the General Assembly has *not* occupied exclusively the field of tobacco sales regulation let alone found that "uniform regulation" by the State alone "is necessary." *O'Neil*, 617 A.2d at 111.

Third, although the Tobacco-Company Appellants cite a few Rhode Island statutes prohibiting selling tobacco to minors or giving free tobacco products to minors, or within 500 feet of a school, Appellants' Br. at 57, Appellants do not come close to showing, through that limited activity, that General Assembly intended to occupy exclusively this entire field of regulation. As distinguished by the District Court, none of those "state law sections prohibiting the sale or free distribution of tobacco products to minors contains an express reservation of power over the regulation of the distribution of tobacco products." (Add. 37). Hence, the Tobacco-Company Appellants fail to show that the General Assembly intended to occupy exclusively the field of regulation over the sales of tobacco products including the Price Ordinance. (Add. 37, *citing Amico's*, 789 A.2d at 907).

Fourth, while the Rhode Island Supreme Court teaches that it is "most critical" to consider "if the action of a municipality has a significant effect upon

27

people outside the home rule town or city, the matter is apt to be deemed one of statewide concern," *O'Neil*, 617 A.2d at 111, here that factor cuts *against* preemption because the Price Ordinance by its plain text has *no* effect or force outside the City of Providence. *See* Price Ordinance § 14-303 (Add. 48-49).

Appellants retort that the General Assembly considered but declined to enact "bills with language virtually identical" to the Price Ordinance. (Appellants' Br. 58). But declining to occupy a field of local regulation does not equal occupying a field of local regulation—and Appellants do not cite a single case holding otherwise. As the District Court explained, "the General Assembly's apparent disinclination to enact measures similar to the provision in Section 14-303 is simply insufficient to support an inference that the Legislature intended to preempt completely the regulation of tobacco product sales." (Add. 37-38); *see also*, *U.S. Smokeless Tobacco II*, 2011 U.S. Dist. LEXIS, at * 8 ("That the FDA may someday choose to regulate smokeless tobacco products in a manner inconsistent with the Ordinance does not mean that the City is deprived of its power to regulate *in the absence of such action.*") (emphasis added). Hence, Appellants' final preemption argument fails because legislative silence and inaction do not equal field preemption.

Indeed, in rejecting a field preemption argument in the tobacco regulation context, the Rhode Island Supreme Court itself made clear that when the General Assembly intends to occupy a field of regulation, it knows precisely how to do so:

> In its enactment of statutes regulating smoking, the General Assembly at no time disclosed, by implication or otherwise, its intent to occupy exclusively the field of regulating smoking as the Legislature explicitly did in G.L. 1956 § 39-1-1(c*)*, when it preempted local regulation of utilities. See *Town of E. Greenwich v. Narragansett Electric Co.,* 651 A.2d 725, 729 (R. I. 1994).

*Amico's*, 789 A.2d at 908. Thus, as the General Assembly has not occupied exclusively the field regulating the sales of tobacco products, Rhode Island law does not preempt the Price Ordinance.

## CONCLUSION

The Preservation and Savings Clauses of the FSPTCA, as well as the new Savings Clause at Section 1334(c) of the Cigarette Labeling Act, authorize Providence to do exactly what it did through the Flavor Ordinance and Price Ordinance—regulate the sale of tobacco products. In light of the strong presumption against federal preemption of these local health and safety regulations, aimed at the public health objective of curbing youth consumption of tobacco products, neither the FSPTCA nor the Cigarette Labeling Act show Congress's "clear and manifest purpose" to preempt such local regulations. Likewise, the Rhode Island General Assembly by silence and inaction never intended to preempt the entire field of regulation of tobacco product sales.  Hence, *Amici* request that this Court reject all of the Tobacco-Company Appellants' preemption arguments, affirm the District Court's opinion, and uphold these Providence Ordinances.

*Respectfully submitted*,

AMERICAN ACADEMY OF PEDIATRICS-RI CHAPTERS;
AMERICAN CANCER SOCIETY CANCER ACTION NETWORK;
AMERICAN HEART ASSOCIATION;
AMERICAN LEGACY FONDATION;
AMERICAN LUNG ASSOCIATION;
AMERICAN LUNG ASSOCIATION IN RHODE ISLAND;
CAMPAIGN FOR TOBACCO-FREE KIDS;
CENTER FOR SOUTHEAST ASIANS;
CHARIHO TRI-TOWN TASK FORCE ON SUBSTANCE ABUSE
PREVENTION;
CODAC BEHAVIORAL HEALTHCARE;
DISCOVERY HOUSE;
FAMILY SERVICE OF RHODE ISLAND;
FEDERAL HILL HOUSE;
JOHN HOPE SETTLEMENT HOUSE;
MEETING STREET;
NARRAGANSETT CONSULTING;
NARRAGANSETT PREVENTION PARTNERSHIP;
NATIONAL ASSOCIATION OF COUNTY AND CITY HEALTH
OFFICIALS;
RHODE ISLAND COLLEGE SCHOOL OF NURSING;
RHODE ISLAND MEDICAL SOCIETY;
RHODE ISLAND PUBLIC HEALTH INSTITUTE;
RHODE ISLAND STATE NURSES ASSOCIATION;
UNIFIED INSIGHT CONSULTING;
URBAN LEAGUE OF RHODE ISLAND; and
YOUTH PRIDE INC.

*By their counsel,*

/s/ Donald A. Migliori                           Dated:  June 4, 2013
MOTLEY RICE LLC
Donald A. Migliori
Vincent I. Parrett
321 South Main St., 2nd Floor
Providence, RI 02903
Phone:  401.457.7700
dmigliori@motleyrice.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 6,962 words and therefore satisfies the type-volume limitation of Fed. R. App. P. 29(d).

By:    <u>/s/ Donald A. Migliori</u>
Donald A. Migliori
MOTLEY RICE LLC

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I, Donald A. Migliori of Motley Rice LLC, certify that on June 4, 2013, this

*Amici Curiae* Brief was filed and served electronically through the Court's

CM/ECF System on all counsel of record who are registered CM/ECF users.


By:   <u>/s/ Donald A. Migliori  </u>
     Donald A. Migliori
     MOTLEY RICE LLC

     *Counsel for Amici Curiae*