No. 13-1053

—————————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

—————————————————

NATIONAL ASSOCIATION OF TOBACCO OUTLETS, INC., et al.;

*Plaintiffs-Appellants,*

v.

CITY OF PROVIDENCE, *et al*.;

*Defendants-Appellees.*

—————————————————

On Appeal From The United Stated District Court
For The District Of Rhode Island
Hon. Mary M. Lisi, Chief Judge

—————————————————

## AMICUS CURIAE'S BRIEF IN SUPPORT OF APPELLEES CITY OF PROVIDENCE *et al.*, IN SUPPORT OF AFFIRMANCE OF DISTRICT COURT ORDER, AND AGAINST STATE PREEMPTION

—————————————————

June 4, 2013

Jacqueline G. Kelley
Thomas J. Corrigan Jr.
Rhode Island Executive Office of
Health and Human Services
Louis Pasteur Building
57 Howard Avenue
Cranston, RI  02920
(401) 462-6820
JGKelley@ohhs.ri.gov

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………….  2

STATEMENT OF IDENTITY AND INTEREST ……………………  7

II. SUMMARY OF ARGUMENT ……………………………………  10

III. ARGUMENT …………………………………………………  11

A.  STATE LAW DOES NOT PREEMPT EITHER ORDINANCE ….  11

1.  State Law Does Not Preempt City's Regulation Of
    Tobacco Products Sales ………………………………………...  11

2.  State Law Does Not Preempt City's Ban Of Flavored
    Tobacco Products …………………………………………………  25

IV.    CONCLUSION …………………………………………………  26

V. CERTIFICATION OF COMPLIANCE …………………………  26

VI. CERTIFICATION OF SERVICE…………………………………  28

TABLE OF AUTHORITIES

Amico's, Inc. v. Mattos
    789 A.2d 899 (R.I. 2002) ……………………………… 12, 16, 17, 18

Coastal Recycling. Inc. v. Connors
    854 A.2d 711 (R.I. 2004) ……………………………………… 19

Grasso Service Center, Inc. v. Sepe
    962 A.2d 1283, 1289 (R.I. 2009) ………………………………… 19

National Association of Tobacco Outlets, Inc. v. City of Providence
    Not Reported in F.Supp., 2012 WL 6128707 (D.R.I. 2012) ...… 10, 12

State ex rel. City of Providence v. Auger
    44 A.3d 1218 (R.I. 2012) …………………………………... 18, 19

Town of Warren v. Thornton-Whitehouse
    740 A.2d 1255, 1261 (R.I. 1999) ………………………………… 16

Town of Westerly v. Bradley
    877 A.2d 601 (R.I. 2005) ………………………………………… 19

Constitutional Provisions

R.I. Const., Art. XIII, § 1 ………………………………………… 17

R.I. Const., Art. XIII, § 2 ……………………………………… 17, 26

Statutes

Cranston Code of Ordinances, § 5.68.020 ……………………… 24

Providence Code of Ordinances, § 14-300 et seq. ……………… 24

Providence Code of Ordinances, § 14-303 ……………………… 14

Providence Code of Ordinances, § 14-303 ¶ 3(1) ……………… 15

Providence Code of Ordinances, § 14-309 …………………… 25

R.I. Gen. Laws § 6-13-1(d) ……………………………………………  15

R.I. Gen. Laws § 6-13-2 ………………………………………… 14, 15

R.I. Gen. Laws § 6-13-3 ………………………………………… 14, 15

R.I. Gen. Laws § 6-13-7 ……………………………………………  15

R.I. Gen. Laws § 6-13-11 …………………………………………  14

R.I. Gen. Laws § 11-9-13 ……………………………………  19, 20, 21

R.I. Gen. Laws § 11-9-13.1 …………………………………………  21

R.I. Gen. Laws § 11-9-13.3 …………………………………………  20

R.I. Gen. Laws § 11-9-13.5 …………………………………………  21

R.I. Gen. Laws § 11-9-13.6 …………………………………………  21

R.I. Gen. Laws § 23-1-1 ……………………………………………  7

R.I. Gen. Laws § 23-17.5-26 ………………………………………… 22

R.I. Gen. Laws chapter 23-20.6 …………………………………… 17

R.I. Gen. Laws § 23-20.6-1 …………………………………………  17

R.I. Gen. Laws § 23-20.6-2 ………………………………………… 17, 18

R.I. Gen. Laws chapter 23-20.7 ……………………………………  23

R.I. Gen. Laws § 23-20.7-6 …………………………………………  18

R.I. Gen. Laws chapter 23-20.9 …………………………………… 21

R.I. Gen. Laws § 23-20.9-3 …………………………………………  21

R.I. Gen. Laws § 23-20.9-8 …………………………………………  22

R.I. Gen. Laws § 23-20.9-11 …………………………………………… 17

R.I. Gen. Laws §§ 23-20.10-2 …………………………………………… 22

R.I. Gen. Laws § 23-20.10-2(15)(a) …………………………………….16

R.I. Gen. Laws § 23-20.10-3 …………………………………………… 22

R.I. Gen. Laws §§ 23-20.10-3(13) …………………………………… 16

R.I. Gen. Laws §§ 23-20.10-4 …………………………………………… 22

R.I. Gen. Laws § 23-20.10-9(a) …………………………………………… 23

R.I. Gen. Laws §§ 23-20.10-10(a) …………………………………………… 22

R.I. Gen. Laws § 23-20.10-12 …………………………………………… 22

R.I. Gen. Laws § 23-20.11-4(a) …………………………………………… 23

R.I. Gen. Laws § 23-20.11-5 …………………………………………… 23

R.I. Gen. Laws § 23-20.11-6 …………………………………………… 23

R.I. Gen. Laws § 23-28.15-3 …………………………………………… 22

R.I. Gen. Laws § 23-28.15-23 …………………………………………… 18

R.I. Gen. Laws § 23-64-2 …………………………………………… 24

R.I. Gen. Laws § 23-71-1(e) …………………………………………… 25

R.I. Gen. Laws § 40.1-1-3.1 …………………………………………… 20

R.I. Gen. Laws chapter 40-22 …………………………………….. 24, 26

R.I. Gen. Laws § 44-20-1 …………………………………………… 24

R.I. Gen. Laws § 44-20-2 …………………………………………… 24

4

R.I. Gen. Laws § 44-20-8 ……………………………………………… 24

R.I. Gen. Laws § 44-20-12 …………………………………………… 24

R.I. Gen. Laws § 44-20-12.1 ………………………………………… 24

R.I. Gen. Laws § 44-20-12.3 ………………………………………… 24

R.I. Gen. Laws § 44-20-13.2 …………………………………… 24, 25

R.I. Gen. Laws § 44-20-43 …………………………………………… 24

R.I. Gen. Laws § 44-20-51 …………………………………………… 24

R.I. Gen. Laws § 44-20-51.1 ………………………………………… 24

R.I. Gen. Laws § 44-20.1-1 …………………………………………… 24

R.I. Gen. Laws § 44-20.1-7 …………………………………………… 24

R.I. Gen. Laws § 44-20.1-8 …………………………………………… 24

R.I. Gen. Laws §§ 44-20.1-9 ………………………………………… 24

R.I. Gen. Laws § 44-20.2-2 …………………………………………… 24

R.I. Gen. Laws § 45-2-25(d) ………………………………………… 21

R.I. Gen. Laws § 45-25-18.1(a)(2) ………………………………… 23

R.I. Pub.L. 2004, ch. 198, § 2 ……………………………………… 15

R.I. Pub.L. 2004, ch. 209, § 2 ……………………………………… 15

R.I. Pub.L. 2010, ch. 101, § 2 ……………………………………… 20

R.I. Pub.L. 2010, ch. 105, § 2 ……………………………………… 20

R.I. Pub.L. 2011, ch. 257, § 1…………………………………………24

R.I. Pub.L. 2012, ch. 241, art. 21, § 6 ………………………………    24

Warwick Code of Ordinances, § 10-23………………………………    24

<u>Court Rules</u>

Fed. R. App. P. 29(a) …………………………………………………     7

Fed. R. App. P. 32(a) …………………………………………………   26, 27

## I. STATEMENT OF IDENTITY AND INTEREST

The Rhode Island Department of Health is interested in the outcome of the instant appeal because its mission is to "do all in its power to ascertain the causes and the best means for the prevention and control of diseases or conditions detrimental to the public health, and adopt proper and expedient measures to prevent and control diseases and conditions detrimental to the public health in the state." R.I. Gen. Laws § 23-1-1.  The department is an agency of the State of Rhode Island, which is permitted to file an amicus curiae brief pursuant to Fed. R. App. P. 29(a).  The Health Department works in collaboration with Rhode Island's cities and towns to improve public health, safety and welfare.  The department's role in enforcing some of the state laws regarding tobacco is relevant to its arguments pertaining to state preemption.  It is desirable to submit this brief because if the two Providence tobacco ordinances succeed in reducing the lure of tobacco for adolescents and young adults, they will help lower the number of chronic users of this addictive, harmful substance, which is an important public health goal.

Indeed, 88 percent of long-term tobacco users start using tobacco — and become addicted — by the time they are age 18,[1] despite the illegality of

---

[1]  U.S. Department of Health and Human Services. Preventing Tobacco Use

minors purchasing it in Rhode Island.  Close to half of adolescents who become regular smokers will die prematurely from tobacco-related disease[2] and will lose an average of 14 years of life.[3] Each day in the United States, over 3,800 people under 18 smoke their first cigarette[4] and over 1,000 people under 18 become daily cigarette smokers.[5]  Approximately 20 percent of adolescents between 12 and 17 may have used tobacco in the 30

---

Among Youth and Young Adults: A Report of the Surgeon General. Atlanta, GA: U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Center for Chronic Disease Prevention and Health Promotion, Office on Smoking and Health, 2012, at 134.

[2] CDC, Sustaining State Programs for Tobacco Control, Data Highlights, 2006, Table 1 Smoking Prevalence (Adult and Youth), Percentage of Smokers Who Tried to Quit Past Year, Smoking-Attributable Deaths, Projected                                                         Deaths. http://www.cdc.gov/tobacco/data_statistics/state_data/data_highlights/2006/ pdfs/dataHighlights06table1.pdf

[3] http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5114a2.htm

[4] http://www.cdc.gov/tobacco/data_statistics/sgr/2012/ consumer_booklet/ pdfs/consumer.pdf, page 16, "Preventing Tobacco Use Among Youth and Yung Adults, a Report of the Surgeon General, U.S. Department of Health and Human Services (2012).

[5] Results from the 2010 National Survey on Drug Use and Health: Summary of National Findings, U.S. Department Of Health And Human Services Substance Abuse and Mental Health Services Administration Center for Behavioral       Health       Statistics       and       Quality,       at       56 http://www.samhsa.gov/data/NSDUH/2k10NSDUH/2k10Results.pdf

days prior to the survey.[6]

The usage rate for smokeless tobacco in that crucial age group has risen during the past decade or so.[7] According to a 2012 report[8] from the Campaign for Tobacco-Free Kids, "a 2010 study found that while 17 percent of non-smokeless using high school males had smoked in the past month, almost 60 percent of male high school smokeless users had smoked cigarettes in the past month."[9] This report adds, "From 2002 to 2007, more than half (52.8%) of smokeless users aged 12 to 17 and 66.9 percent of those aged 18 to 25 also reported cigarette smoking. In contrast, among smokeless users over age 25, only 37 percent also reported cigarette smoking."[10] The

---

[6] Centers for Disease Control and Prevention. Youth Risk Behavior Surveillance—United States, 2007. Morbidity and Mortality Weekly Report. June 6, 2008; 57(SS-04), Table 27, http://www.cdc.gov/mmwr/preview/mmwrhtml/ss5704a1.htm#tab27

[7] http://monitoringthefuture.org/pubs/monographs/mtf-overview2010.pdf; and "Monitoring the Future" National Results on Adolescent Drug Use, Overview of Key Findings 2010" Lloyd Johnston, PhD, et al., at 40.

[8] Boonn, Ann. The Danger From Dissolvable Tobacco And Other Smokeless Tobacco Products, August 6, 2012.

[9] Tomar, SL, Albert HR, & Connolly, GN, "Patterns of dual use of cigarettes and smokeless tobacco among US males: findings from national surveys," Tobacco Control 19:104-109, 2010.

[10] Substance Abuse and Mental Health Services Administration (SAMHSA), The NSDUH Report: Smokeless Tobacco Use, Initiation, and Relationship to Cigarette Smoking: 2002 to 2007, Rockville, MD: Office of Applied

Price Ordinance adapts one of the most successful tobacco-control policies: maintaining higher prices for cigarettes reduces their consumption and may reduce use by young people disproportionately.[11]    Both Providence ordinances are rationally related to the important public interest of reducing the purchases of flavored and discounted tobacco so that addiction and its related health costs can be reduced where the problem begins.

## II. SUMMARY OF ARGUMENT

This amicus curiae brief supports the findings of the United States District Court for the District of Rhode Island, Lisi, C.J., presiding, that two city ordinances are not preempted by Rhode Island state law. National Association of Tobacco Outlets, Inc. v. City of Providence, Not Reported in F.Supp., 2012 WL 6128707 (D.R.I. 2012).  Chief Judge Lisi referred to the first ordinance as the "Price Ordinance," which regulates certain sales tactics of Providence retailers of tobacco, and referred to the second ordinance as the "Flavor Ordinance," which prohibits the retail sales in Providence of certain non-cigarette tobacco products.

---

Studies, March 5, 2009, http://www.oas.samhsa.gov/2k9/smokelessTobacco/smokelessTobacco.pdf.

[11] The inverse relationship between price and cigarette sales is discussed in the most recent Surgeon General's Report, Preventing Tobacco Use Among Youth and Young Adults, http://www.surgeongeneral.gov/library/reports/preventing-youth-tobacco-use/full-report.pdf.

The Rhode Island Constitution's "home rule" provisions allow each city or town the right of self government in all local matters while retaining for the General Assembly the power to act in relation to cities' and towns' property, affairs and government if applied alike to all state municipalities. The ordinances are consistent with home rule and do not contravene any of the state's limited oversight of the sale and taxation of tobacco.

The Rhode Island Department of Health argues that the statutes and regulations the state enforces either do not address the ordinance's subject at all – in the case of banning flavored tobacco products – or establish minimum requirements that cities and towns may expand – in the case of price discounts.  While the General Assembly speaks through the Rhode Island General Laws, this Executive Branch agency sees no inconsistency between state law and the city's two tobacco ordinances.

Chief Judge Lisi correctly denied the Tobacco Companies' motion for summary judgment and their motions for preliminary injunction and permanent injunction, and correctly granted the Providence City of Providence's motion for summary judgment.

## III. ARGUMENT

## A.  STATE LAW DOES NOT PREEMPT EITHER ORDINANCE

### 1.  State Law Does Not Preempt City's Regulation Of Tobacco

<u>Products Sales</u>

Chief Judge Lisi held in the case below, <u>National Association of Tobacco Outlets, Inc.</u>, *supra*, at 15-16, that:

> "[T]he Plaintiffs primarily rely on three provisions of Rhode Island law, two of which are criminal statutes related to the sale or distribution of tobacco products to minors, and a third provision which generally relates to product pricing. * * *  Neither of the two state law sections prohibiting the sale or free distribution of tobacco products to minors contains an express reservation of power over the regulation of the distribution of tobacco products. Moreover, as noted in *Amico's*, 'there is no indication that the General Assembly even impliedly intended to occupy the field of regulating smoking.' *Amico's*, 789 A.2d at 907 (listing state statutes that demonstrate the Legislature's recognition of municipalities' authority to regulate smoking in certain areas). Finally, the Plaintiffs' reference to the General Assembly's apparent disinclination to enact measures similar to the provision in Section 14–303 is simply insufficient to support an inference that the Legislature intended to preempt completely the regulation of tobacco product sales."

The Price Ordinance impacts a major source of marketing expenditures for tobacco companies.   According to a Federal Trade Commission report on tobacco issued in 2013:[12]

> "[T]he major manufacturers spent $8.366 billion on cigarette advertising and promotion in 2011, an increase from the $8.046 billion reported in 2010.  * * * Since 2002, the "promotional

---

[12] See http://www.ftc.gov/os/2013/05/130521cigarettereport.pdf (last visited May 24, 2012).

allowance" category has been replaced by four separate categories: price discounts, promotional allowances paid to retailers, promotional allowances paid to wholesalers, and other promotional allowances. As noted above, the largest of these categories was price discounts paid to cigarette retailers or wholesalers in order to reduce the price of cigarettes to consumers (e.g., off-invoice discounts, buy downs, and voluntary price reductions), which accounted for expenditures of $7.00 billion in 2011 (up from $6.49 billion in 2010). In addition, the industry spent $357.0 million in 2011 (down from $370.0 million in 2010) on promotional allowances paid to cigarette retailers in order to facilitate the sale or placement of cigarettes (e.g., payments for stocking, shelving, displaying, and merchandising brands, volume rebates, and incentive payments); and $401.0 million on promotional allowances paid to cigarette wholesalers (e.g., payments for volume rebates, incentive payments, value-added services, and promotional executions). When these three promotional allowance categories are combined, they total $7.75 billion, and account for 92.7 percent of all 2011 spending; in 2010, they totaled $7.27 billion, 90.4 percent of all spending. * * * The industry reported spending $171.2 million on coupons to reduce the retail cost of cigarettes in 2011 (a decrease from the $235.8 million reported in 2010)."

The Price Ordinance is thus rationally related to the important public health goal of reducing tobacco use.

The remainder of this Brief shall survey Rhode Island's tobacco-related laws in support of the hearing justice's decision that the state's regulation of tobacco is neither explicitly nor implicitly preemptive. The state Departments of Administration, Health, and Behavioral Healthcare, Developmental Disabilities and Hospitals ("BHDDH"), and the Attorney General are allowed to enforce certain uses and sales of tobacco products.[13]

---

[13] In addition, the Rhode Island Department of Health operates the Rhode

However, none of the tobacco-related statutes declare an expressed intent of exclusive state control or a complex regulatory scheme relating to tobacco sales and pricing, and none vest power and authority in one body or set forth a comprehensive approach to regulation and enforcement.

Rhode Island law sets a minimum price at which any product may be purchased by a wholesaler or retailer. R.I. Gen. Laws § 6-13-3. The minimum sales price for tobacco allowed by the state is its invoice or replacement cost. R.I. Gen. Laws § 6-13-2. The state's "floor" regarding retailers' cigarette pricing for consumers is neither preemptive of nor inconsistent with the city's Price Ordinance, Providence Code of Ordinances, § 14-303. The city prohibits a price discount on multiple packs entirely, regardless of the actual cost to the retailer.[14]

This ordinance forbids any licensed tobacco retailer to "accept or

_____

Island Tobacco Control Program, which receives grants from the federal Centers for Disease Control and Prevention for education, assessment and advocacy programs relating to tobacco usage and abuse.

[14] The Tobacco Companies cite R.I. Gen. Laws § 6-13-11, which governs advertising of discount pricing for all retail sales, as governing tobacco retailers. Tobacco Companies' Brief, at 13. This section's scope is not preemptive on the subject of discount pricing; it merely circumscribes the manner of advertising any discounts, presumably those allowable by law. The statute's reference to "below the regular price" may still be above the cost to the tobacco retailer; thus the Price Ordinance does not interfere with this statute, or with R.I. Gen. Laws § 6-13-2. Furthermore, § 11 governs only advertising of discounts, not discounting itself.

redeem, offer to accept or redeem * * * any coupon that provides any tobacco products without charge or for less than the listed or non-discounted price[]" and forbids them from offering "multi-pack discounts." *Id*., § 14-303 ¶ 3(1). A two for one sale, or buy-one-get-one, is either a 50 percent discount on each pack, or one full price pack and one free pack. Assuming it is a 50 percent discount, the question of whether the ordinance is more limiting than § 6-13-2 depends on the markup above the cost to the retailer, but in either case, chapter 6-13 [which applies to all tangible personal property, not just tobacco, per § 6-13-1(d)] is not preemptive.[15] R.I. Gen. Laws § 6-13-7 states that "[w]henever the application of any provisions of any other law of this state conflicts with the application of any provision of this chapter[,] then this chapter shall prevail."

The Rhode Island Supreme Court has addressed the issue of preemption in the field of regulation of smoking in restaurants, prior to enactment of a statewide ban on such smoking in most restaurants.[16] In

---

[15] This chapter provides that retailers face misdemeanor charges if, "with the intent to injure competitors or destroy competition," they "advertise[], offer[] to sell, or sell[] at retail any item of merchandise at less than cost to the retailer." R.I. Gen. Laws § 6-13-3. Wholesalers face the same penalty, but distributors of tobacco face felony charges for such competitive practice. *Id*. The Attorney General enforces this criminal statute.

[16] The Public Health and Workplace Safety Act (enacted in R.I. Pub.L. 2004, ch. 198, § 2 and ch. 209, § 2) prohibited smoking in restaurants, R.I.

Amico's, Inc. v. Mattos, 789 A.2d 899 (R.I. 2002) some restaurants and a hospitality/tourism association filed a complaint seeking to prevent enforcement of a town ordinance that required restaurants and bars either to ban smoking entirely or to provide an enclosed smoking area. After a Superior Court summary judgment for the town, the Supreme Court held that the town did not exceed its authority in enacting the ordinance, which was found "not inconsistent with state laws regulating smoking and that the statutory scheme neither expressly nor by necessary implication exclusively occupies the field of regulation of smoking in restaurants." *Id.*, at 908.

The Amico's Court began its preemption analysis by citing Town of Warren v. Thornton-Whitehouse, 740 A.2d 1255, 1261 (R.I. 1999), that a "local ordinance or regulation may be preempted in two ways. First, a municipal ordinance is preempted if it conflicts with a state statute on the same subject. * * * Second, a municipal ordinance is preempted if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject." *Id.*, at 907. The Court opined that the no-

---

Gen. Laws §§ 23-20.10-3(13) and -2(15)(a) allows smoking in "smoking bars" that serve food and alcohol as long as half or more of their annual revenues are generated by tobacco "and the serving of food or alcohol is only incidental to the consumption of such tobacco products." Having access to the 2002 decision in Amico's, the General Assembly did not see fit to add language in this 2004 Act about preemption over tobacco sales.

smoking ordinance merely expanded baseline standards set in the statute that

allowed the state Department of Health to adopt regulations for enforcement

of the Smoking in Public Places Act [now repealed].  That ordinance:

> "conforms to the requirements of article 13, section 2, [of the Rhode
> Island Constitution[17]] inasmuch as its regulation of smoking in
> restaurants is 'not inconsistent' with the constitution and laws of the
> state. * * * [T]he more stringent smoking regulations imposed by the
> town advance the stated purposes of chapter 20.6 of title 23 [now
> repealed], 'to protect the health and atmospheric environment of the
> non-smoker by regulating smoking.' Section 23-20.6-1. Moreover,
> nothing in the chapter suggests that the Legislature intended that
> maximum standards are prescribed therein, and we conclude that the
> statute sets a floor rather than a ceiling in regulating smoking in
> restaurants. [Citation omitted.]" *Id*.

The Court then considered whether the Legislature intended to occupy

the field of regulating smoking in Rhode Island restaurants by enacting § 23-

20.6-2:

> "On its face, the statute contains no express reservation of power over
> the regulation of smoking in eating establishments. Such a
> reservation, however, need not necessarily be express; rather, it may
> be implied in the legislative scheme. [Citation omitted.]  Here, there is
> no indication that the General Assembly even impliedly intended to
> occupy the field of regulating smoking. Any such intention is refuted
> first, by the fact that the statute purports to regulate smoking only 'in

---

[17] This article's first section states, "It is the intention of this article to grant
and confirm to the people of every city and town in this state the right of self
government in all local matters."  Its second section states that "Every city
and town shall have the power at any time to adopt a charter, amend its
charter, enact and amend local laws relating to its property, affairs and
government not inconsistent with this Constitution and laws enacted by the
general assembly in conformity with the powers reserved to the general
assembly." [Emphases supplied.] R.I. Const., Art. XIII, §§ 1 and 2.

certain public areas,' second, by the fact that the Legislature has recognized the authority of municipal bodies to regulate smoking in areas such as public schools, G.L.1956 § 23-20.9-11, licensed child care centers, G.L.1956 § 23-28.15-23, and workplaces G.L.1956 § 23-20.7-6, [footnote omitted] and third, by the fact that the department of health, charged with enforcement of § 23-20.6-2(e), interprets that statute 'as allowing local governments to adopt ordinances which provide stricter controls on smoking.' * * * The dueling issues of local authority and state preeminence often intersect because home rule requires an analysis of whether the issue is of local or statewide concern, whereas preemption requires an analysis of whether the issue is implicitly reserved within the state's sole domain." *Id.*, at 908.

The Public Health and Workplace Safety Act, which superseded the now-repealed law referenced in Amico's, does not explicitly or implicitly preempt the field of smoking regulation. R.I. Gen. Laws chapter 23-10.10.

The Rhode Island Supreme Court's most recent survey of the issue of preemption appeared in State ex rel. City of Providence v. Auger, 44 A.3d 1218 (R.I. 2012). A defendant who was found guilty of violating a city noise ordinance asserted on appeal that the ordinance was preempted by state law. The Court found that the ordinance did not conflict with the statute, and:

"actually furthers the General Assembly's policy (as that policy is articulated in the cited statutes) by creating a specific standard for a particular set of devices in a specific area. We accordingly conclude that the requirements of [the ordinance] control a specific type of noise * * * in furtherance of the objectives of state law, rather than being in conflict with the less exigent provisions of [either of two specific state statutes]. * * * [I]t must be determined whether, with respect to the regulation of noise, it was the expressed intent of the General Assembly that 'the state control is to be exclusive or whether

the control is to be exercised concurrently by the state and by the municipality.' [Citation and footnote omitted.] The General Assembly * * * certainly did not enact a 'complex regulatory scheme,' as occurred in the cases in which we have held that the General Assembly intended to occupy the field. [Citation omitted.] * * * [D]efendant's contention as to preemption cannot be readily reconciled with the language of article 13 of the Rhode Island Constitution — that '[t]he people of every city and town in this state [have] the right of self government in all local matters.' See Coastal Recycling. Inc., 854 A.2d at 715; see also Bradley. 877 A.2d at 607–08 ('Cities and towns with home rule charters * * * are vested with the authority to legislate matters of public health and safety, * * * as long as those regulations are not inconsistent with the constitution or statutes of the state * * *.').''Id.

The same court in Grasso Service Center, Inc. v. Sepe, 962 A.2d 1283, 1289 (R.I. 2009) held that a state statute preempted an ordinance:

"To determine whether this state law preempts a local ordinance, we must consider whether the General Assembly 'intended that its statutory scheme completely occupy the field of regulation on a particular subject.' [Citations omitted.] This determination is more complicated when, as has occurred in the present case, 'there has been limited delegation of regulatory authority to the cities and towns.' Id. Nevertheless, despite a limited delegation of authority, '[o]rdinances * * * will be found unenforceable and invalid when they are in contravention of the city charter or the general laws of the state.' [Citations omitted.]"

"An Act to Stop the Illegal Sale of Tobacco Products to Children," R.I. Gen. Laws § 11-9-13, prohibits the sale of any tobacco products to children under age 18.  It also prohibits vending machines from selling cigarettes unless the machine is under continuous supervision and equipped with a device that prevents dispensing of the tobacco product unless

electronically unlocked.[18]  While no city could pass an ordinance to allow

children to buy tobacco in contravention of this state law, § 13 does not

indicate that it was enacted to preempt the entire field of tobacco sales for all

users.  The General Assembly stated its reasons for the act prohibiting

tobacco sales to minors:

> "The use of tobacco by Rhode Island children is a health and
> substance abuse problem of the utmost severity. The legislature finds
> that tobacco product usage by children in Rhode Island is rampant and
> increasing with over thirty percent (30%) of high school students
> smoking. The present law prohibiting the sale of tobacco to children is
> being ignored by many retailers. Rhode Island tobacco retailers
> illegally sell … (4,800,000) packs, over … ($11,000,000) in tobacco
> product sales, to children annually. Tobacco industry advertising
> targets children as the replacement smokers for the one thousand one
> hundred forty-five (1,145) adults who die daily from tobacco product
> usage. Approximately seventy percent (70%) of the Rhode Island high
> school seniors who are smoking today will be the addicted adult
> smokers of tomorrow." R.I. Gen. Laws § 11-9-13.3

Enforcement of this act was given to the Rhode Island Department of

Behavioral Healthcare, Developmental Disabilities and Hospitals,[19] which

"shall develop, monitor, and aggressively enforce health rules and

regulations pertaining to stopping the illegal sale of tobacco products to

---

[19] R.I. Gen. Laws § 40.1-1-3.1, enacted as P.L. 2010, ch. 101,  2, and ch.
105, § 2, renamed "MHRH" as the Department of Behavioral Healthcare,
Developmental Disabilities and Hospitals, and stated that any reference in
the general laws to the "department of mental health, retardation and
hospitals" shall be deemed to mean the same as the newer name.

children." R.I. Gen. Laws § 11-9-13.5. This agency's roles in preventing underage tobacco use include, "[c]oordinat[ing] and promot[ing] the enforcement of [the Act] and serve as the primary liaison from this department to other state or local agencies, departments, or divisions on issues pertaining to stopping children's access to tobacco; *** (3) [i]nvestigat[ing] concurrently with other state and local officials violations of this chapter * * * [and] (5) [s]eek[ing] enforcement, concurrently with other state and local officials, of the penalties as detailed in this chapter. ***" R.I. Gen. Laws § 11-9-13.6.

The shared enforcement of § 11-9-13.6 between state and local officials evinces a legislative intent not to preempt tobacco regulation. A further example is the City of Woonsocket municipal court's concurrent jurisdiction to determine violations of R.I. Gen. Laws §§ 11-9-13 and 13.1 (for violations in that city, implicitly). R.I. Gen. Laws § 45-2-25(d).

The Smoking Restrictions in Schools Act, R.I. Gen. Laws chapter 23-20.9, was enacted because "As tobacco now kills over … (434,000) people in the United States each year, it is the intent of this health legislation to eliminate the exposure of children attending school, and other persons working in schools, to the school-site health hazard of tobacco smoke and other tobacco product usage." R.I. Gen. Laws § 23-20.9-3. This act is

enforceable by the Rhode Island Department of Health, per § 23-20.9-8.

The Public Health and Workplace Safety Act prohibits smoking in such public places as libraries, museums, professional offices, banks, laundromats, hotels and motels, bars (but not "smoking bars"), theaters, nursing homes, health facilities, child care and adult day care facilities, buses, cabs, restaurants, retail stores, school buildings, shopping malls, sports arenas, and places of employment. R.I. Gen. Laws §§ 23-20.10-3 and -4; see also §§ 23-17.5-26 and 23-28.15-3. The Department of Health's director has the authority to promulgate rules to carry out the act, and to seek enforcement by sending a compliance notice, and after a second complaint, by referring it to the solicitor of the town or city having jurisdiction over the alleged violator. R.I. Gen. Laws §§ 23-20.10-2 and -10(a). This law does not govern the sale of tobacco products or their pricing, and it envisions cooperation between state and local authorities in its enforcement with no exclusive control reserved to the state. The act further states that:

> "The state of Rhode Island and its designees shall annually request other governmental and educational agencies having facilities within the state to establish local operating procedures in cooperation and compliance with this chapter. This includes urging all federal, state, municipal and school agencies to update their existing smoking control regulations to be consistent with the current health findings regarding secondhand smoke." R.I. Gen. Laws § 23-20.10-12.

Smoking in common areas of public housing with more than four

units is prohibited, and is enforceable by certain local housing authorities per R.I. Gen. Laws § 45-25-18.1(a)(2) and by the director of the Department of Health per R.I. Gen. Laws § 23-20.10-9(a). Also, the Workplace Smoking Pollution Control Act regulates smoking in enclosed workplaces. R.I. Gen. Laws chapter 23-20.7. This is enforced by the Department of Health in collaboration with the Attorney General.

Rhode Island requires that any cigarette sold in the state must meet certain fire safety standards. "No cigarettes may be sold or offered for sale in this state or offered for sale or sold to persons located in this state unless such cigarettes have been tested in accordance with the test method and meet the performance standard specified in this subsection; and a written certification has been filed by the manufacturer with the director in accordance with § 23-20.11-5 of this act; and the cigarettes have been marked in accordance with § 23-20.11-6 of this act." R.I. Gen. Laws § 23-20.11-4(a). This is preemptive over the fire safety of cigarettes sold statewide, but not of the other conditions of cigarette sales.

The last group of statutes in this survey of state tobacco-related laws relate to the state's cigarette tax. The Rhode Island tax administrator collects taxes on cigarettes and rolling paper, smokeless tobacco, cigars, pipe tobacco products, and "little cigars"; and violations may be enforced by this

official through suspension of the license to sell cigarettes. R.I. Gen. Laws §§ 44-20-1(1) and (2), -2, -8, -12, -12.1, -12.3, and -13.2; and § 44-20.2-2. Violations may also result in criminal and civil penalties.  R.I. Gen. Laws § 44-20-43, -51 and -51.1.  Some proceeds of the cigarette tax are devoted to the minority health promotion program. R.I. Gen. Laws § 23-64-2.

While the Tobacco Companies correctly note[20] that R.I. Gen. Laws § 44-20-2 requires a license for any person to distribute, deal or sell cigarette products, chapter 40-22 neither regulates pricing or discounts, nor allows or prohibits flavoring of tobacco.  Also, the state has authority to tax sales of cigarettes made by mail or other delivery, and the state's Attorney General may bring court actions to restrain certain violators and may bring felony charges for violations.  R.I. Gen. Laws §§ 44-20.1-1, 7, -8, and -9.

It is important to note that the Price Ordinance is consistent with the

---

[20] Tobacco Companies' Brief, at 57.  The Providence ordinance that requires a city retail tobacco dealer's license, Providence Code of Ordinances § 14-300 et seq., was enacted on March 17, 2011 (as Warwick did in 2000 and Cranston did in 2011), and the General Assembly has reviewed this licensing scheme twice since then, see R.I. Pub.L. 2011, ch. 257, § 1 and R.I. Pub.L. 2012, ch. 241, art. 21, § 6. The legislature had access to the fact that the state's three most populous cities had added a requirement for a city tobacco retailer license in addition to the same state license. See Warwick Code of Ordinances, § 10-23 (enacted May 11, 2000, in Ord. No. O-00-17), Cranston Code of Ordinances, § 5.68.020 (enacted June 27, 2011, in Ord. No. 2011-25).  The General Assembly has not voted for any change to preemption over this area since Chief Judge Lisi's decision. See http://webserver.rilin.state.ri.us/Lawrevision/seclist/Lawrev2013.htm

tobacco industry's agreement with Rhode Island to change marketing practices. As noted in the state's Tobacco Product Manufacturers' Escrow Funds Act:

> "On November 23, 1998, leading United States tobacco product manufacturers entered into a settlement agreement, entitled the 'Master Settlement Agreement,' with the state [of Rhode Island]. The Master Settlement Agreement obligates these manufacturers, in return for a release of past, present, and certain future claims against them as described in the settlement agreement, to pay substantial sums to the state (tied in part to their volume of sales); to fund a national foundation devoted to the interests of public health; and to make substantial changes in their advertising and marketing practices and corporate culture, with the intention of reducing underage smoking." R.I. Gen. Laws § 23-71-1(e). [Emphasis supplied.]

Nothing in the Price Ordinance is inconsistent with state law or the powers reserved to the General Assembly.

### 2. State Law Does Not Preempt City's Ban Of Flavored Tobacco Products

The Flavor Ordinance makes unlawful the sale or offer of sale "any flavored tobacco product to a consumer, except in a smoking bar." Providence Code of Ordinances, § 14-309. Although the term "cigarette" is defined in the Flavor Ordinance, it is mentioned only to distinguish that product from those that indeed are banned and are included in the definition of "tobacco product."

The analysis of state preemption relating to the city's ban of flavored tobacco products is mostly the same as that in Section 1 of this Brief, *supra*.

Although R.I. Gen. Laws § 44-20-13.2 allows for taxation of smokeless tobacco, chapter 44-20 does not govern flavored tobacco. The Flavor Ordinance does not ban the sale of smokeless tobacco in general, merely smokeless tobacco that is flavored. This ordinance does not conflict with this or any other state statute because there is no such law and the state has not "occupied the field." The General Assembly has not explicitly reserved this power, and the Rhode Island Constitution's home rule article allows such local laws "relating to its property, affairs and government," R.I. Const., Art. XIII, § 2.

## VI.    CONCLUSION

The Department of Health believes that the provisions of both ordinances are designed to protect the public health and that these measures are likely to advance important public health objectives. Invalidation of these measures would harm the public health and would hamper the achievement of important public health goals at the state and municipal level.

## V.  CERTIFICATION OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because this brief contains 5198 words on 538 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Respectfully Submitted,

MICHAEL FINE, M.D., DIRECTOR

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS
DEPARTMENT OF HEALTH

By Their Attorneys,

/s/ Jacqueline G. Kelley
Jacqueline G. Kelley, Esquire
Administrator of Legal Services
Rhode Island Executive Office of
Health and Human Services
Louis Pasteur Building
57 Howard Avenue
Cranston, RI  02920


/s/ Thomas J. Corrigan Jr.
Thomas J. Corrigan Jr., Esquire
(1040263)
Senior Legal Counsel
Rhode Island Executive Office of
Health and Human Services
3 Capitol Hill

Providence, RI  02903
(401) 222-7755
FAX (401) 222-6548

## VI.  CERTIFICATIONOF SERVICE

I, Jacqueline G. Kelley, of the Rhode Island Executive Office of Health and Human Services, certify that on June 4, 2013, I caused a true and accurate copy of this Amicus Curiae Brief to be filed with the Clerk of the Court and served in accordance with the Federal Rules of Appellate Procedure and the Local Rules of the United States Court of Appeals for the First Circuit, via the Court's CM/ECF system, on all counsel registered to received electronic notices, listed below.

<u>Counsel for Appellants:</u>

Gerald J. Petros, Esquire
<u>Gpetros@haslaw.com</u>
Adam M. Ramos, Esquire
<u>aramos@haslaw.com</u>
HINCKLEY, ALLEN & SNYDER, LLC
50 Kennedy Plaza, Suite 1500
Providence, RI  02903

James R. Oswald, Esquire
<u>joswald@apslaws.com</u>
Kyle Zambarano, Esquire
<u>kzambarano@apslaws.com</u>
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903

Noel J. Francisco, Esquire
njfrancisco@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001

Floyd Abrams, Esquire
fabrams@cahill.com
Joel Kurtzberg, Esquire
jkurtzberg@cahill.com
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY  10005

Miguel A. Estrada, Esquire
mestrada@gibsondunn.com
Michael J. Edney, Esquire
medney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Kenneth Parsigian, Esquire
LATHAM  & WATKINS LLP
John Hancock Tower, 20th Floor
200 Clarendon Street
Boston, MA  02116

Counsel for Appellee:

Anthony F. Cottone, Esquire
cottonelaw@cox.net
55 Dorrance Street, Suite 400
Providence, RI  02903

Jeffrey M. Padwa, Esquire
Matthew T. Jerzyk, Esquire
City of Providence Law Department
444 Westminster Street, Suite 200
Providence, RI  02903

Counsel for Amici Curiae:

Donald A. Migliori, Esquire
dmigliori@motleyrice.com
Vincent I. Parrett, Esquire
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI  02903

By:    /s/ Jacqueline G. Kelley
       Jacqueline G. Kelley
       RHODE ISLAND EXECUTIVE
       OFFICE OF HEALTH AND
       HUMAN SERVICES
       Counsel for Amicus Curiae Rhode
       Island Department of Health